[Cite as *Classic Healthcare Sys., L.L.C. v. Miracle*, 2017-Ohio-8540.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| CLASSIC HEALTHCARE SYSTEMS, LLC d.b.a. FRANKLIN RIDGE HEALTHCARE CENTER, | : | |
| | : | CASE NO. CA2017-03-029 |
| Plaintiff-Appellant, | : | |
| | : | O P I N I O N |
| - vs - | : | 11/13/2017 |
| | : | |
| FAUN MIRACLE, et al., | : | |
| Defendants-Appellees. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14CV86509

W. Cory Phillips, 30100 Chagrin Boulevard, Suite 350, Cleveland, Ohio 44124-5705, for plaintiff-appellant

Ronald W. Ruppert and Rachel M. Ruppert, 1063 East Second Street, P.O. Box 369, Franklin, Ohio 45005, for defendant-appellee

**M. POWELL, P.J.**

{¶ 1} Plaintiff-appellant, Classic Healthcare Systems, LLC d.b.a. Franklin Ridge Healthcare Center ("Franklin"), appeals from the decision of the Warren County Common Pleas Court, which awarded it damages against defendant-appellee, David Miracle. For the reasons discussed below, we reverse the judgment of the trial court and remand for further

proceedings.

{¶ 2}  In 2010, Faun Miracle, age 83, fell and injured herself.  Faun's son, David, arranged for Faun to stay at Franklin's skilled nursing facility while she rehabilitated.  David signed certain documents prepared by Franklin relating to Faun's admission to its facility.

{¶ 3}  Both parties concur that David did not agree to assume a personal financial responsibility for Faun's charges at Franklin's facility in any of the documents.  However, David signed a document in which he agreed to "utilize" Faun's assets over which he had control to pay for Franklin's services.

{¶ 4}  Although Faun's stay was intended to be temporary, she remained at Franklin's facility for four years.  David, who was Faun's attorney-in-fact pursuant to a power of attorney, managed Faun's financial resources during this time, including her checking account.  David used Faun's checking account to make various payments on her behalf, including paying health insurance premiums and the maintenance costs of Faun's properties.

{¶ 5}  Franklin charged Faun approximately $5,000 per month.  Franklin sent monthly invoices to David.  Over Faun's four-year stay, David paid Franklin infrequently and always less than the overdue balance.  Ultimately, Faun owed Franklin over $100,000 by the time she was discharged in or around April 2014.

{¶ 6}  In November 2014, Franklin sued Faun and David.  Franklin asserted a breach of contract claim against Faun for nonpayment.  Franklin asserted a breach of contract claim against David alleging that he breached a promise to utilize Faun's assets to pay for Franklin's services.

{¶ 7}  Faun passed away before the trial commenced.  Franklin dismissed its claims against Faun and tried its claims against David before a magistrate in November 2015.  At trial, Franklin introduced its written billing policy.  David admitted signing the billing policy as the "Responsible Party."  Paragraph six of the billing policy provided:

**LIABILITY OF RESPONSIBLE PARTY FOR RESIDENT'S CHARGES.** A RESPONSIBLE PARTY DOES NOT ASSUME PERSONAL FINANCIAL RESPONSIBILITY OR LIABILITY FOR THE RESIDENT'S CHARGES, HOWEVER, THE RESPONSIBLE PARTY MUST UTILIZE THE RESIDENT'S ASSETS OVER WHICH THEY HAVE HAS [sic] CONTROL TO PAY FOR SERVICES RENDERED.

{¶ 8} Franklin also introduced a copy of the admission agreement. David did not sign the admission agreement but the magistrate found that a Franklin representative reviewed the terms of the agreement with him, that Franklin upheld its obligations under the agreement to provide Faun with food, shelter, and skilled nursing, and that both parties agreed to the terms. Like the billing policy, the admission agreement provided that David "does agree, to the extent that they have control over the RESIDENT's assets/funds, to see that RESIDENT's charges are paid." The admission agreement also contained a provision requiring Faun and David to "make appropriate application" for Medicaid. Both Faun and David were required to:

> act as quickly as possible to establish and maintain eligibility for Medicaid. These actions must include, but are not limited to, taking any and all steps necessary to ensure that the RESIDENT's assets are within the required limits and that these assets remain within the allowable limits for Medicaid assistance.

{¶ 9} The record reflects that David repeatedly and unsuccessfully applied for Medicaid on Faun's behalf. However, Faun's available financial resources rendered her ineligible. Franklin could not legally discharge Faun during David's attempts to apply for Medicaid coverage for Faun.

{¶ 10} David admitted that he signed another document that explained that Franklin billed 30 days in advance, that invoiced amounts were due upon receipt, and that payment must be made by the 10th of the month. In this respect, Franklin introduced into evidence monthly billing statements that it sent to David for Faun's charges. The first statement date is September 2010 and the final statement is May 2014. David agreed that he received these billing statements.

{¶ 11} Franklin also introduced into evidence Faun's checking account statements from December 2011 through December 2013. These statements reflect account balances ranging from approximately $18,000 to $3,600. The account statements show regular checking activity, including deposits and withdrawals.

{¶ 12} Another exhibit introduced at trial included a ledger of Franklin's invoices and the payments received. The ledger demonstrated the infrequency of David's payments to Franklin. For instance, David paid nothing on Faun's account from January 22, 2011 through December 17, 2011, between March 7, 2012 and January 13, 2013, and between January 15, 2013 and October 2, 2013.

{¶ 13} The magistrate issued a decision making the following findings of fact: (1) through the period of her residency at Franklin, Faun had available resources totaling $219,073.25, (2) Franklin's charges for housing and nursing care totaled $199,217.99, and (3) David used Faun's assets to pay Franklin $149,615.08. The magistrate then reviewed how David managed the remaining $69,458.17 that was not paid to Franklin. The magistrate construed the admission agreement and found that it contemplated that David might use some of Faun's resources to pay for Faun's healthcare needs, for maintaining, repairing, heating, insuring, and cleaning Faun's real estate, as well as for stewarding and liquidating Faun's assets. The magistrate concluded that David used $56,486.63 of Faun's resources to make these types of payments that were "authorized" under the parties' agreement. The magistrate also determined that David utilized $12,971.54 of Faun's resources in ways unrelated to Faun's welfare. These transactions included credit card payments, reimbursements to David for "unknown expenses," dog grooming, and anticipated funeral expenses. The magistrate concluded that these were "unauthorized" expenditures under David's agreement with Franklin that should have been available to satisfy Franklin's invoices.

{¶ 14} Considering the foregoing, the magistrate determined that David breached his agreement with Franklin by making $12,971.54 in "unauthorized" payments and recommended awarding Franklin damages for that amount. After overruling objections, the trial court adopted the magistrate's decision in its entirety. Franklin raises two assignments of error for our review.

{¶ 15} Assignment of Error No. 1:

{¶ 16} THE TRIAL COURT ERRED IN HOLDING THAT FRANKLIN RIDGE MAINTAINED THE BURDEN TO DEMONSTRATE THAT [THE] ACT OF PRESERVING ASSETS WAS INCONSISTENT WITH MR. MIRACLE'S CONTRACT OBLIGATIONS.

{¶ 17} Assignment of Error No. 2:

{¶ 18} TRIAL COURT ERRED IN HOLDING THAT THE AGREEMENT EXCUSED NON-PAYMENT FOR THE PURPOSE OF PRESERVING ASSETS.

{¶ 19} Franklin's two assignments of error present similar arguments and we address them together. Generally, Franklin argues that the court erred when it determined that the parties' agreement authorized David to use Faun's financial resources to pay the costs related to "preserving" Faun's real property and other assets. Franklin argues that the amounts that David paid for these costs should have been available to satisfy its invoices.

{¶ 20} This court's review of written contracts and instruments is de novo. *Banks v. Heritage Property Group, L.L.C.*, 12th Dist. Clermont No. CA2013-10-078, 2014-Ohio-991, ¶ 21; *Providence Manor Homeowners Assn., Inc. v. Rogers*, 12th Dist. Butler No. CA2011-10-189, 2012-Ohio-3532, ¶ 26 ("[t]he construction of a written contract is a matter of law to be resolved by the court"). The primary role of the court in reviewing a contract is to ascertain and give effect to the intent of the parties. *Cooper v. Chateau Estate Homes, L.L.C.*, 12th Dist. Warren No. CA2010-07-061, 2010-Ohio-5186, ¶ 12. A contract that is, by its terms, clear and unambiguous requires no interpretation or construction and will be given the effect

called for by the plain language of the contract. *Id.* The measure of damages in a contract action is the amount necessary to place the non-breaching party in the position he or she would have been in had the breaching party fully performed under the contract. *Baird v. Crop Prod. Servs., Inc.*, 12th Dist. Fayette Nos. CA2011-03-003 and CA2011-04-005, 2012-Ohio-4022, ¶ 24.

{¶ 21} Initially, we note that under federal and state law and regulations a nursing facility, such as Franklin's, may not require a third-party to guarantee payment or accept personal responsibility for payment of a resident's facility charges. However, a nursing facility may require that a representative of a nursing facility resident pay the facility from the assets of the resident controlled by the representative. *See* 42 U.S.C. 1396r-(c)(5)B)(ii); 42 C.F.R. 483.15(a)(3); and Ohio Adm.Code 5160-3-02(C)(4). Franklin's billing policy and admission agreement are consistent with federal and state law in this regard. The dissent expresses the opinion that the federal and state regulations prohibit imposition of personal liability upon a third-party for breaching an agreement to pay a nursing facility from the resident's assets under the third-party's control. Whether that may be, this case does not call upon us to address that issue. The trial court determined that David breached his agreement with Franklin, thus incurring a personal liability to Franklin for that breach. David has neither appealed this determination, nor has he argued in defense of Franklin's appeal that the federal and state regulations preclude his personal liability. Therefore, we proceed with the underlying premise that David breached his agreement with Franklin and that he is personally liable for damages as a consequence of that breach.

{¶ 22} The trial court focused its damage calculation on whether the parties' agreement authorized certain payments. However, this court concludes that whether other payments David made with Faun's resources were "authorized" or "unauthorized" is irrelevant to determining whether David breached his agreement and caused Franklin damages under

the unambiguous terms of the parties' agreement. The language contained in both the billing policy and admission agreement place no restrictions upon how Faun's assets are to be used, other than to use those assets David controlled to pay Franklin for its services. Given that invoices were due on receipt, we construe the language to mean liquid assets, or assets readily available to pay Franklin's invoices. Moreover, because the parties' agreement anticipated spending down Faun's assets as quickly as possible to qualify her for Medicaid, there was no contractual justification for David to attempt to preserve Faun's liquid funds for future expenditures.

{¶ 23} The trial court viewed the situation as one transaction spanning the entire time of Faun's residence at Franklin. In doing so, the trial court considered Faun's total assets, Franklin's total charges for Faun's care and the amount and purpose of David's total expenditure of Faun's assets during that time. The trial court should have regarded the matter as a series of separate monthly transactions and considered the amount of Franklin's invoice for that month, including any amount delinquent from prior months, and the amount of Faun's assets under David's control that could be applied to the payment of Franklin's invoice. Thus, to determine whether David caused Franklin damages from a breach of the agreement necessarily required the trial court to determine whether David had control over liquid assets at the time an invoice came due. If so, then those assets should have been paid towards Franklin's invoice in full or up to the amount of Faun's assets David controlled. If assets remained after David paid a monthly Franklin invoice in full then David was free to use the assets in any manner consistent with his obligations as Faun's attorney-in-fact.

{¶ 24} We reverse and remand for additional findings of fact, if necessary, and for a recalculation of damages. On remand, the trial court should determine, based upon a review of the trial record, whether David had control of liquid assets on the due date of Franklin's

invoices, beginning with the first invoice in 2010.[1] If the court determines that David had control of Faun's liquid assets on the due date that were not paid to Franklin then that amount is damages properly payable to Franklin. Any remaining balance due, which could not have been satisfied with Faun's available funds, should be carried forward to the next month's invoice for purposes of calculating ongoing damages owed to Franklin. For example, if Franklin's invoice was $5,000 in the first month, David had $4,000 in assets under his control but only paid $2,000 towards Franklin's bill, Franklin's damages would be $2,000 (the additional amount David should have paid). The $1,000 balance due and owing that could not be satisfied with available liquid funds David controlled would be added to the next month's invoice amount. The court should repeat this analysis until it arrives at a total damage amount that is the lesser of provable damages or the amount sought by Franklin in its complaint.

{¶ 25} Accordingly, we sustain Franklin's first and second assignments of error, reverse the trial court's decision with respect to damages, and remand for further proceedings.

{¶ 26} Judgment reversed and remanded.

PIPER J., concurs.

S. POWELL, P.J., dissents.

**S. POWELL, P.J., dissenting.**

---

1. The dissent points out that the record does not contain Faun's bank records prior to December 2011, rendering a calculation of damages prior to that time impractical. That may very well be the case. Franklin is entitled to only the damages it has proved at trial. Faun's bank records during the time she was incurring charges as a Franklin resident is evidence of her assets under David's control at any particular time. In this regard, complete bank records may be necessary to determine if David is liable for the charges accruing prior to December 2011. However, complete bank records may not be necessary if, for instance, Franklin invoices include a past-due balance and post-December 2011 bank records reflect that David controlled assets sufficient to pay the invoice. This is for the trial court to determine based upon the trial record.

{¶ 27} I would affirm because I find no error in the trial court's method of calculating damages, including its decision to find no breach with respect to David's expenditures for the preservation of Faun's real estate. The evidence reflects that Faun's assets, in total, were paid to Franklin and Faun's other valid creditors and there is no evidence that David was personally enriched by his management of Faun's assets.

{¶ 28} Had I concurred with the reversal I would respectfully disagree with the majority's remand instructions. The majority instructs the trial court to re-calculate damages beginning in 2010. Yet the majority opinion notes that the record only contains banking statements beginning in December 2011. I would limit Franklin to demonstrating damages beginning in December 2011, based only upon the statements in the record. In other words, I would not allow Franklin a second opportunity to introduce evidence it failed to introduce at trial.

{¶ 29} Although David has not cross-appealed concerning this issue, I am also compelled to disagree with the underlying conclusion that Franklin was entitled to a personal judgment against David based upon his breach of the agreement with Franklin. The contractual language upon which Franklin's purported breach of contract claim relies is contained in the admission agreement and billing policy. The admission agreement provides:

> The SPONSOR does not assume personal financial responsibility or liability for the RESIDENT's charges, but the SPONSOR does agree, to the extent that they have control over the RESIDENT's assets/funds, to see that RESIDENT's charges are paid.

Similarly, the billing policy provides:

> A RESPONSIBLE PARTY DOES NOT ASSUME PERSONAL FINANCIAL RESPONSIBILITY OR LIABILTIY FOR THE RESIDENT'S CHARGES, HOWEVER, THE RESPONSIBLE PARTY MUST UTILIZE THE RESIDENT'S ASSETS OVER WHICH THEY HAVE HAS [sic] CONTROL TO PAY FOR SERVICES RENDERED.

{¶ 30} In both documents, David is agreeing to use Faun's funds to pay for Franklin's charges. However, the language is explicit that David is never assuming a personal financial liability in conjunction with this agreement.

{¶ 31} To the extent that the language in the contract is ambiguous in terms of the liability it creates for David, we should construe it strictly against the party that drafted it, i.e., Franklin. *Westfield Ins. Co. v. Galatis*, 100 Ohio St.3d 216, 220, 2003-Ohio-5849. I would conclude that the two documents gave Franklin more limited rights against David. Franklin could sue for injunctive relief, moving the court to order David to turn over Faun's funds under his control. Franklin could also sue for a money judgment but only in the circumstance where Franklin could prove that David took Faun's assets and commingled them with his own, which Franklin has never alleged occurred.

{¶ 32} The federal and state regulations governing these types of agreements support my conclusion. Generally, those regulations allow nursing homes to enter into *voluntary* third-party guarantees. However, the regulations provide that a nursing home cannot make a third-party guarantee a requirement for admission or for a continued stay in the facility. The regulations further provide that a nursing home may enter into a contract with a third party who has control over a resident's funds wherein the third party would agree to pay using the resident's funds. The federal regulation provides:

> The facility must not request or require a third party guarantee of payment to the facility as a condition of admission or expedited admission, or continued stay in the facility. However, the facility may request and require a resident representative who has legal access to a resident's income or resources available to pay for facility care to sign a contract, *without incurring personal financial liability*, to provide facility payment from the resident's income or resources.

(Emphasis added.) 42 C.F.R. 483.15(a)(3).

Similarly, the state regulation provides:

- 10 -

(C) A provider of a NF shall not:

\* \* \*

(4) Require a third party to accept personal responsibility for paying the facility charges out of his or her own funds. However, the facility may require a representative who has legal access to an individual's income or resources available to pay for facility care to sign a contract, *without incurring personal financial liability*, to provide facility payment from the individual's income or resources if the individual's medicaid application is denied and if the individual's cost of care is not being paid by medicare or another third-party payor. \* \* \*."

(Emphasis added.) Ohio Adm.Code 5160-3-02(C)(4).

{¶ 33} In both instances, the agreement allowed by these regulations cannot create a personal financial liability. The same result, i.e., no personal liability, would occur if one viewed the relationship and agreement between David, Faun, and Franklin through the lens of agency. David appears to be signing these documents as an agent of his mother. Under traditional agency principles, the agent (David) is never liable for the obligations of the principal (Faun) unless the agent enters into an obligation but fails to disclose his role as an agent for the principal. *Lamar Advantage GP Co. v. Patel*, 12th Dist. Warren No. CA2011-10-105, 2012-Ohio-3319, ¶ 18. There is no evidence that Franklin was misled as to David's role.

{¶ 34} Without the ability to proceed against David, Franklin was limited to pursuing the debt from Faun. However, the record reflects that Faun died shortly before the trial commenced and Franklin voluntarily dismissed its claims against her instead of substituting her estate pursuant to Civ.R. 25(A).

{¶ 35} The record contains no indication whether an estate was opened for Faun. But Franklin, as Faun's creditor, had the ability to open her estate and present claims within the time permitted by statute. R.C. 2113.06(C); R.C. 2117.06. Franklin could have then pursued an action against Faun's other creditors who received preferential treatment because of

- 11 -

David's management of Faun's asset. R.C. 1313.56. Franklin could also have asserted claims on behalf of the estate, e.g., a breach of fiduciary duty claim against David for his management of her assets while her attorney-in-fact. This is all to say that Franklin had options in lieu of proceeding directly against David, which they waived.

{¶ 36} In addition, the trial court limited its judgment in this case to the extent of Faun's total assets, or $219.073.25. David used Faun's assets to pay Franklin $149,615.08 and David properly paid other creditors $56,486.63. David now owes Franklin the remaining $12,971.54 of Faun's total assets. I would affirm because in a sense David is not paying a personal judgment, but rather is effectively paying back Faun's assets, which David improvidently used. However, this remand could and likely will result in a judgment against David for amounts he properly paid to Faun's valid creditors.

{¶ 37} Considering the foregoing, I respectfully dissent.