[Cite as *Classic Healthcare Sys., L.L.C. v. Miracle*, 2019-Ohio-2676.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

| | | |
|---|---|---|
| CLASSIC HEALTHCARE SYSTEMS, L.L.C. DBA FRANKLIN RIDGE HEALTHCARE CENTER, | : | |
| | : | CASE NO. CA2018-10-123 |
| Appellant, | : | O P I N I O N |
| | | 7/1/2019 |
| | : | |
| - vs - | : | |
| | : | |
| FAUN MIRACLE, et al., | : | |
| Appellees. | : | |

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 14CV86509

Rolf Goffman Martin Lang LLP, W. Cory Phillips, 30100 Chagrin Boulevard, Suite 350, Cleveland, Ohio 44124-5705, for appellant

Ruppert, Bronson & Ruppert Co., LPA, Ronald W. Ruppert, 1063 East Second Street, P.O. Box 369, Franklin, Ohio 45005, for appellee.

**S. POWELL, J.**

{¶ 1} Classic Healthcare Systems, L.L.C. d.b.a. Franklin Ridge Healthcare Center ("Franklin"), appeals from the decision of the Warren County Common Pleas Court, which awarded it damages against appellee David Miracle. For the reasons discussed below, this court affirms the damage award.

{¶ 2}  This is a second appeal following a remand ordered by this court in *Classic Healthcare Sys., L.L.C. v. Miracle*, 12th Dist. Warren No. CA2017-03-029, 2017-Ohio-8540 ("*Classic I*").  The case involved Faun Miracle – David's mother – who was a resident of Franklin's nursing home from 2010 to 2014.  *Id.* at ¶ 2, 4-5.  At the time of Faun's admission, David, acting as her attorney-in-fact, signed a document in which he agreed to "utilize" Faun's assets over which he had control to pay for Franklin's nursing services.  *Id.* at ¶ 7.  David also agreed to the terms of a document that required him to "act as quickly as possible to establish and maintain [Faun's] eligibility for Medicaid."  *Id.* at ¶ 8.  Essentially, David agreed to (1) pay Franklin's invoices with Faun's available resources, and (2) spend down Faun's resources and apply on her behalf for Medicaid assistance.

{¶ 3}  Franklin charged approximately $5,000 per month for nursing services and sent monthly invoices to David.  *Id.* at ¶ 5.  David paid Franklin's invoices infrequently and always for less than what was owed.  Ultimately, Franklin evicted Faun after her unpaid balance exceeded $100,000.  *Id.*

{¶ 4}  Franklin sued Faun and David.  *Id.* at ¶ 6.  Faun passed away before trial and Franklin dismissed its claims against her.  *Id.* at ¶ 7.  Franklin pursued its claims against David, asserting a contract claim alleging that he breached his agreement to use Faun's resources to pay Franklin.  *Id.* at ¶ 6-7.  Franklin alleged that they were owed approximately $50,000 at the time of filing of the complaint.  *See id.* at ¶ 13.

{¶ 5}  The matter proceeded to a bench trial where David testified and Franklin introduced various financial documents concerning Faun's assets under David's control. The court found that over Faun's four-year residency, David had expended approximately $70,000 of Faun's funds on expenses other than Franklin's invoices.  *Id.* at ¶ 13.  The court determined that David expended roughly $57,000 on "authorized" expenses and around $13,000 towards "unauthorized" expenses.  Accordingly, the court awarded damages to

Franklin equaling the unauthorized expenses. *Id.* at ¶ 14.

{¶ 6} Franklin appealed the damage award.[1] This court held that the trial court erred by focusing on whether David's expenditures were authorized or unauthorized. *Id.* at ¶ 22. Instead, the plain language of the agreement contemplated that David would act quickly to spend down Faun's resources so that Faun could obtain Medicaid coverage. The agreement did not prohibit David from using Faun's resources on other expenses so long as he used the available "liquid assets" he controlled to pay Faun's account with Franklin. *Id.*

{¶ 7} This court also held that the trial court erred in viewing the damage calculation as one transaction spanning the length of Faun's residency. *Id.* at ¶ 23. Instead, the court should have assessed damages on a month-to-month basis to determine whether David had control over liquid assets which could be used to pay towards Faun's outstanding bills. *Id.* This court remanded the matter with instructions that the trial court recalculate damages. *Id.* at ¶ 24. Neither party appealed this court's remand opinion.

{¶ 8} On remand, Franklin presented the court with its damage calculation totaling $52,930.37. Therefore, it requested a damage award for the full amount of its unpaid invoice, or $49,602.91. David set forth his calculations of liquid assets and argued for a damage award of $23,818.11. The magistrate's separate calculation yielded a damage award of $31,414.92.[2]

{¶ 9} Both parties objected to the magistrate's decision. The court issued its own decision calculating that David had access to liquid assets that were not paid to Franklin

---

1. David did not cross-appeal the court's conclusion that he was in breach of the agreement or that the agreement could legally create a personal indebtedness.

2. The testimony and exhibits admitted at trial presented an incomplete and overall confusing account of Faun's financial affairs over the four years of residency at Franklin's facility. The lack of clear evidence allowed the parties to take varying positions on whether Franklin demonstrated Faun's available liquid assets, thus resulting in significantly different damage calculations.

totaling $26,979.42. The court then reduced this amount by $7,743.95 to account for automatic withdrawals and real estate taxes paid from Faun's funds. Thus, the court awarded Franklin damages of $19,235.47. Franklin appeals the damage award and raises a single assignment of error.

{¶ 10} Assignment of Error No. 1:

{¶ 11} THE TRIAL COURT ERRED IN ITS CALCULATION OF DAMAGES AS IT WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 12} Franklin argues that the court erred by failing to account for certain assets available to David and that, by its calculation, the liquid assets available to pay it totaled $68,951.64. In support, Franklin refers to a spreadsheet with its damage calculations, including a month-by-month assessment of Faun's assets with reference to the evidence in the record supporting the existence of those assets.

{¶ 13} A reviewing court may not reverse a damage award unless it is against the manifest weight of the evidence. *Henry v. Richardson*, 193 Ohio App.3d 375, 2011-Ohio-2098, ¶ 11 (12th Dist.), *citing Hartkemeyer v. Ventling*, 12th Dist. Butler App. No. CA2007-03-074, 2009-Ohio-93, ¶ 22; *Reinbolt v. Kern*, 183 Ohio App.3d 287, 2009-Ohio-3492, ¶ 28 (6th Dist.). A judgment will not be reversed as being against the manifest weight of the evidence if it is supported by competent, credible evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 280 (1978).

{¶ 14} As an initial matter, Franklin argued for $52,930.37 in damages in its memorandum to the trial court, yet asserts that its damages exceed $68,000 in its appellate brief. Franklin does not explain this significant discrepancy. Upon review of Franklin's damages spreadsheet, the increase could be the result of Franklin failing to account for two of David's payments, totaling $17,665. Adjusted for what appears to be an accounting error, Franklin's claim for damages on appeal would be $51,286.64, which is still different from

the figure presented to the trial court. The reason for this lesser dissimilarity is not apparent.

{¶ 15} This court will limit its review to those months where the respective damage calculations of Franklin and the trial court diverge, and specifically with a focus on where Franklin's assessment of damages exceeds the trial court's assessment or where Franklin's assessment of credits against damages is lower than the trial court's credit.

{¶ 16} For the months of April and May 2012, Franklin's damage claim exceeds the court's calculation of damages by several thousand dollars. Franklin argues that the court failed to account for two checking account deposits during those months. This court has reviewed the bank statements referred to by Franklin. There is, as Franklin claims, a page in the statement listing two additional deposits in April and May. However, the same page contains a running balance that does not correspond with the running balance displayed on the first page of the statement. Therefore, it appears that this page of the statement was erroneously inserted and likely came from a different year of Faun's banking records. Oddly, there are no calendar years printed on the statements to help clarify this issue. The court did not err in declining to impute income to Faun for the two referenced deposits and competent and credible evidence supported the court's damage award for these two months.

{¶ 17} In January 2013, the court credited David for a payment made to Franklin for $40,000. Franklin does not dispute receiving the $40,000 payment but argues that the credit should be reduced to $38,348.27 because of an alleged deposit of $1,651.73 into Faun's bank account. Upon review of the record and the cited bank statement, the deposit in question was made a full year earlier, in January 2012, and was properly accounted for by the court. Therefore, competent and credible evidence supported the court's calculation for January 2013.

{¶ 18} In March 2013, Franklin's damage calculation exceeded the court's

calculation by $3,493.55. This amount represents the balance of Faun's Chase Bank account, which was closed in or around that time. Franklin did not present any documentary evidence indicating how those funds were used or the specific timing of the liquidation of the account. David testified that the funds were used to partially pay for Faun's pre-paid funeral expense. Given the uncertainty in the evidence, the court did not err in declining to find that these were liquid assets under David's control.[3] Competent and credible evidence supports the trial court's decision with respect to March 2013.

{¶ 19} In January 2014, the court calculated damages of $526.73, which represents the total of pension and union benefits received by Faun for that month. Franklin includes this amount but also imputes additional income attributable to Faun's social security direct deposit ($1,141) and the proceeds from the sale of Faun's cattle ($2,947). The court did not err in declining to impute social security income to Faun because Franklin did not introduce records of Faun's checking account in 2014, which presumably would have demonstrated both Faun's receipt of social security and how David managed those funds. The court declined to impute income related to the sale of cattle and there is some competent and credible evidence to support this decision. Specifically, David testified that the proceeds from the sale of cattle were transferred to Franklin by means of a larger March 2014 payment.

{¶ 20} Between March 2014 and November 2014, the court found available liquid assets of $63,074.78, which included the proceeds from the sale of Faun's residence – $58,334.21 – plus nine months of pension/union benefits at $526.73 per month. The sale price of the home was undisputed and an annual statement summarizing pension/union

---

3. The parties below as well as the trial court stated that they interpreted *Classic I* as elevating Franklin to a supercreditor. However, this court held that David was only liable to Franklin up to the amount of Franklin's bill or Faun's assets under his control and he was free to pay other expenses, consistent with his obligations as a power of attorney. *Id.* at ¶ 22-23.

benefits for 2014 was introduced into evidence. Thus, competent and credible evidence supported the trial court's damage calculation for these months.

{¶ 21} Franklin argues that the court should have found $86,343.78 in available liquid assets over the same time. In its appellate brief, Franklin explains that this figure includes the proceeds of the home sale – $58,333.21 – plus nine months of pension/union/social security benefits at $1,667.73 per month, plus $6,500 representing the proceeds from the sale of a property in Kentucky owned by Faun. However, adding these figures yields $79,843.78. Thus, Franklin has apparently added $6,500 in liquid assets from unknown sources.

{¶ 22} This court does not find that the trial court lost its way in failing to include the additional income as argued for by Franklin. With respect to the social security income, Franklin failed to introduce documentary evidence demonstrating the receipt or use of the social security income in 2014. With regard to the Kentucky property, there was evidence that the $6,500 in proceeds from the sale were paid to Franklin in a check dated October 29, 2014. Franklin's own payment ledger confirms the receipt of this payment. Finally, there is no evidence to support the additional $6,500 in liquid assets from unknown sources.

{¶ 23} Franklin also argues that the court erred because it "limited its analysis to funds on deposit in the Fifth Third account." Having reviewed the record, this court is aware of the difficult task presented in analyzing Faun's financial resources over the four years in question. Franklin had the burden of proof but did not present the court with a complete financial record. There was no evidence presented as to income or deposits into Faun's primary checking account for several years. Much of the evidence of how David managed Faun's financial affairs was based on David's recollection at trial rather than financial documents tracing the proceeds of various transactions. Given the state of the record, the court would have naturally focused its attention on the approximate two years of Fifth Third

bank records. Those documents provided a more probative and verifiable view of Faun's financial affairs than the other evidence presented. Nonetheless, the court did not, as Franklin argues, limit its analysis exclusively to the Fifth Third bank records.

{¶ 24} The evidence indicated that an account with Daymet Credit Union was closed with a balance. The court accounted for these funds in September 2010. The Chase Bank funds were used to pay other expenses. There was evidence that the proceeds from the Morgan Stanley account and the cattle sale were paid to Franklin. And finally there was evidence regarding how the proceeds of the various sales of real estate were paid to Franklin, all of which were accounted for by the court. Based on the foregoing, this court concludes that competent and credible evidence supported the damage calculations arrived at by the trial court and Franklin has not demonstrated that the court lost its way. This court overrules Franklin's sole assignment of error.

{¶ 25} Judgment affirmed.

RINGLAND, P.J., and PIPER, J., concur.